Maureen C. VanderMay, WSBA No. 16742
The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 588-8053

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| ELF-MAN, LLC, | ) | Case No.: 2:13-CV-00115-TOR |
| Plaintiff, | ) | |
| | ) | PLAINTIFF'S MEMORANDUM IN |
| v. | ) | OPPOSITION TO MOTION TO DISMISS, |
| | ) | OR FOR MORE DEFINITE STATEMENT, |
| C. G. CHINQUE ALBRIGHT, | ) | BY DEFENDANTS JOSEPHINE |
| ET AL., | ) | GEROE AND DAVID STARR |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Defendants Josephine Geroe and David Starr (referred to herein collectively as "Defendants") have moved for dismissal with prejudice of Plaintiff Elf-Man LLC's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for a more definite statement pursuant to Fed. R. Civ. P. 12(e). For the reasons set forth below, Plaintiff respectfully submits that Defendants' motion should be denied.

## I. INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff commenced this action for copyright infringement against twenty-nine unnamed Defendants based upon the unlawful downloading via BitTorrent of its copyrighted motion picture entitled *Elf-Man*. ECF No. 1. In order to determine the Defendants' identities, Plaintiff sought and was granted leave to subpoena

PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO MOTION TO DISMISS – Page 1

various Internet Service Providers ("ISPs") for the identity of the subscribers to each of the Internet Protocol ("IP") addresses listed on Exhibit 1 to Plaintiff's complaint. ECF No. 1-1. After the Court denied various motions relating to these subpoenas Plaintiff filed its First Amended Complaint naming 25 Defendants. Plaintiff filed notices of dismissal with respect to the remaining Defendants.  ECF Nos. 55, 71 and 73.

Plaintiff's First Amended Complaint sets forth Plaintiff's claims in the alternative, alleging that the named Defendants violated the United States Copyright Act of 1976, 17 U.S.C. §§ 101 et seq., ("the Copyright Act") in one of two ways: either by way of direct and contributory infringement as a result of having downloaded Plaintiff's motion picture via BitTorrent and facilitating such infringement by other BitTorrent users or by way of indirect infringement stemming from their failing to "secure, police and protect the use of their Internet service against illegal conduct." ECF No. 26, p. 23, ¶170.  Plaintiff also altered its damages claims, seeking $30,000 in statutory damages against direct / contributory infringers but damages not to exceed the statutory minimum of $750.00 on its indirect infringement claim.  *Id.* at p. 24, ¶ 177.  On all of its claims, Plaintiff also seeks injunctive relief against further infringement.  *Id.* at p. 22, ¶ 158, p. 23, ¶ 166 & p. 24, ¶ 176.

Defendants' motion claims that Plaintiff's actions in pursuing its claims are unethical and unwarranted and suggests that unsuspecting lay persons are being subjected to abusive tactics.  ECF No. 76 at pp. 3, 18-19.  Defendants presumably cast aspersions on Plaintiff and its counsel to deflect attention from the following facts which gave rise to these claims: 1) Plaintiff's copyrighted work was stolen; and 2) the thefts occurred through IP addresses that non-party ISPs have stated were assigned to Defendants.  Despite Defendants' repeated suggestion that they

PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO MOTION TO DISMISS – Page 2

are merely innocent subscribers to Internet service, they have each played a causal role in the infringement of Plaintiff's copyright:  they either personally downloaded Plaintiff's motion picture *Elf-Man* via BitTorrent and are liable as direct and contributory infringers or they actively provided and paid for Internet access used by another in a manner which was inconsistent with the requirements of their ISPs and which allowed these thefts to occur.

The fallacy of Defendants' argument becomes readily apparent if the technology is put aside and the same facts are applied to a more conventional paradigm. In the present case, Plaintiff has identified an infringing IP address that was used to steal its motion picture and a subscriber who had exclusive ownership and control of the IP address at the relevant time.  If instead this were a theft involving an automobile that was used to drive to and from a crime scene, and Plaintiff had identified a license plate and the sole and exclusive owner of the automobile, Defendants' arguments become transparently false. Defendants may argue that other parties may have had access to their automobile / IP address, but they do not deny that the IP address was assigned to them exclusively for their use. Any subsequent grant of access to other parties was permissive.  The argument that 'anyone could be driving my car' is plausible, but at most, factual in nature. In essence Defendants are arguing for dismissal through an implicit application of a "willful blind eye" defense, something soundly rejected by courts that have addressed the issue. *Viacom Intern., Inc. v. YouTube, Inc.,* 676 F. 3d 19 (2nd Cir. 2013).

## II.  LEGAL ARGUMENT

### A.   THE STANDARD GOVERNING MOTIONS TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

After setting forth the standards for granting a motion to dismiss under Fed.

PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO MOTION TO DISMISS – Page 3

R. Civ. P. 12(b)(6) articulated in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), the Ninth Circuit has stated as follows:

> "'A Rule 12(b)(6) motion tests the legal sufficiency of a claim. A claim may be dismissed only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'' *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir.2001) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). 'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to `state a claim to relief that is plausible on its face.'' *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *Id.*

*Cook v. Brewer,* 637 F.3d 1002, 1004 (9th Cir. 2011).

The Wright & Miller treatise, with extensive citation to authority, states as follows with respect to motions under Rule 12(b)(6):

> "[F]or the purposes of the motion to dismiss, (1) the complaint is construed in the light most favorable to the plaintiff, (2) its allegations are taken as true, and (3) all reasonable inferences that can be drawn from the pleading are drawn in favor of the pleader."

Wright & Miller, *Federal Practice and Procedure: Civil 3d* § 1357. *See also Chubb Custom Ins. Co. v. Space Systems/Loral, Inc.,* 710 F.3d 946, 956 (9th Cir. 2013) ("When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true, and construe them in the light most favorable to the non-moving party.").

Particular caution should be employed when a motion to dismiss is asserted against a pleading which employs a novel theory of liability. *Electrical Const. & Maintenance Co., Inc. v. Maeda Pacific Corp.,* 764 F.2d 619, 623 (9th Cir. 1985) ("The court should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or extreme, since it is important that new legal theories be explored and assayed in the light of actual facts rather than a

PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO MOTION TO DISMISS – Page 4

1    pleader's suppositions.") (quoting  5 C. Wright & A. Miller, *Federal Practice and*

2    *Procedure:*  Civil Sec. 1357, at 601-603 (1969)).  *See also Baker v. Cuomo,* 58

3    F.3d 814, 818-19 (2nd Cir. 1995) ("Rule 12(b)(6) dismissals are especially

4    disfavored in cases where the complaint sets forth a novel legal theory that can

5    best be assessed after factual development.").

6          B.    BECAUSE THEIR ARGUMENTS IN SUPPORT OF DISMISSAL
                 ONLY RELATE TO PLAINTIFF'S THIRD CLAIM FOR RELIEF,
7                DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED
                 COMPLAINT IN ITS ENTIRETY SHOULD BE DENIED
8

9          Defendants argue that if Plaintiff has failed to state a claim in any of its

10   three claims for relief that its First Amended Complaint must be dismissed in its

11   entirety.  ECF No. 76  at p. 6.  They assert that "[a] Plaintiff who makes equivocal,

12   alternative allegations in a list of 'and/or' possibilities fails to state a claim on

13   which relief can be granted if <u>any</u> of the potential alternative possibilities are

14   insufficient to state a claim for relief."  *Id.*

15         Defendants rely upon various decisions in support of this assertion, none of

16   which are apposite.  *Patterson v. Novartis Pharms. Corp.,* No. 10-5886 (6th Cir.

17   August 23, 2011) (Attachment C to Defendants' motion, ECF No. 76-3),

18   concluded that the plaintiff in a product liability action had not stated a claim

19   under Massachusetts law because she failed to allege that the drug at issue had

20   been manufactured by the defendant – an allegation that she had been given either

21   the defendant's drug or its generic equivalent was insufficient.  *Id.* at 4.  The

22   Court's ruling stands to reason since the defendant manufacturer had made the

23   proprietary drug but not the generic equivalent.  Similarly, in  *Gevo, Inc. v.*

24   *Butamax Advanced Biofuels LLC,* No. 1:12:cv-01724-SLR (D. Del. July 8, 2013)

25   (Attachment D to Defendants' motion, ECF No. 76-4), the Court concluded that a

26   combination of equivocal language and lack of specificity in the complaint left

27   PLAINTIFF'S MEMORANDUM IN OPPOSITION
28   TO MOTION TO DISMISS – Page 5

open the possibility that one of the defendants had not engaged in the prohibited conduct.[1]

By contrast, in the present controversy, Plaintiff alleges claims in the alternative pursuant to Fed. R. Civ. P. 8(d)(2). Plaintiff's First Amended Complaint alleges that Defendants have violated the Copyright Act *either* by way of direct infringement (First Claim for Relief) and contributory infringement (Second Claim for Relief) *or* by way of indirect infringement (Third Claim for Relief). ECF No. 26 at pp. 21-24, ¶¶ 150-176. As a result, several of the First Amended Complaint's factual allegations are cast in the alternative. For example, paragraph 22, which Defendants refer to as "encapsulat[ing] the equivocal and hypothetical nature of Plaintiff's complaint" ECF No. 76 at p. 9, simply reflects

---

[1] The remaining decisions relied upon by Defendants, *Pa. Empls. Benefit Trust Fund v. AstraZeneca Pharm. LP,* No. 6:09-cv-5003 Orl-22DAB (M.D. Fla. July 20, 2009) (Attachment E to Defendants' motion, ECF No. 76-5); *Gregory v. Dillard's, Inc.,* 565 F.3d 464 (8th Cir. 2009); and *AllGood Entertainment, Inc. v. Dileo Entertainment & Touring, Inc.,* 726 F. Supp. 2d 307 (S.D.N.Y. 2010), are equally inapposite. The equivocation cited by the courts in these decisions resulted in the failure to plead with sufficient specificity the elements of the claims at issue. None of these decisions appear to have involved claims pled in the alternative pursuant to Fed. R. Civ. P. 8(d)(2), nor do they call into question the manner in which Plaintiff has pled its alternative claims.

PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO MOTION TO DISMISS – Page 6

this alternative pleading.  Paragraph 22 sets forth a description of the Defendants' conduct in violation of the Copyright Act which takes account of the fact that Plaintiff has alleged that each Defendant engaged in either direct and contributory infringement on the one hand or indirect infringement on the other.  The First Amended Complaint gives Defendants clear notice of the alternative claims pled against them and the factual bases for these claims.  If, however, the Court views the inclusion of a general description of the facts which takes account of these alternative claims as problematic, Plaintiff submits that the remedy lies in the filing of an amended complaint and not in the dismissal of this action with prejudice.

Defendants ignore the fact that Fed. R. Civ. P. 8(d)(2) is directly contrary to their assertion that if any of Plaintiff's claims are insufficient that all must be dismissed.  The rule provides in its entirety as follows: "*Alternative Statements of a Claim or Defense.* A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." As such, even if the Court were to conclude that Plaintiff's Third Claim for Relief (the only claim addressed in Defendants' motion) is not sufficient as a matter of law, Plaintiff's alternative claims for direct and contributory infringement would stand.

Defendants also ignore decisions from other districts which conclude that when a moving party asserts multiple claims and one of these is found to be insufficient under Fed. R. Civ. P. 12(b)(6), only the insufficient claim is subject to dismissal.  *See, e.g., Taylerson v. American Airlines, Inc.,* 183 F. Supp. 882, 884 (S.D.N.Y. 1960) ("A complaint which contains alternative statements of the claim, some of which are insufficient, will not be dismissed if any one alternative

PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO MOTION TO DISMISS – Page 7

statement supports the claim."); *Bleecker v. Drury,* 3 F.R.D. 325, 327 (W.D.N.Y. 1944) (where defendant seeks dismissal of entire action for failure to state a claim the motion must be denied if any cause of action is sufficient).

### C.    PLAINTIFF'S THIRD CLAIM FOR RELIEF STATES A CLAIM FOR INDIRECT COPYRIGHT INFRINGEMENT

Defendants argue that Plaintiff's claim for indirect copyright infringement, which is set forth in its Third Claim for Relief, fails because it does not state a claim consistent with the decisional law governing contributory or vicarious infringement.  ECF No. 76 at pp. 11-17.  For the reasons outlined below, Plaintiff submits that claims for indirect infringement under the Copyright Act are not limited to these two doctrines and that its Third Claim for Relief states a claim upon which relief can be granted.

Defendants take a categorical approach to the issue of when a person may be found liable for indirect copyright infringement.  They treat two variants of indirect infringement that have been addressed extensively in the decisional law as the only possible theories upon which liability for indirect infringement may be established.  This approach may be sound when applied in the context of claims that are wholly statutory.  However, where the governing law is largely the product of the judiciary's interpretation of broadly phrased legislation, this approach is misplaced.

Defendants argue that the appellate courts have "developed two doctrines by which a defendant can be held liable for the infringement of another: Contributory Infringement and Vicarious Infringement" and that "Plaintiff fails to state a claim under either doctrine." ECF No. 76 at p. 11.  Nothing contained in the existing law limits claims for indirect infringement to these two categories and, indeed, the U.S. Supreme Court has cautioned against the narrow view espoused by

PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO MOTION TO DISMISS – Page 8

1  Defendants.

2      The development of the decisional law governing copyright infringement

3  illustrates that the courts have been instrumental in defining the circumstances

4  under which a party may be held liable for the direct infringement of others.  The

5  U.S. Supreme Court's seminal decision in *Sony Corp. v. Universal City Studios,*

6  *Inc.,* 464 U.S. 417 (1983), concerned allegations of copyright infringement against

7  the manufacturer and seller of a video recording device.  The plaintiff alleged that

8  the manufacturer was liable for the infringement of its copyrights by users of the

9  recording device as a result of its marketing of the device.  464 U.S. at 419.

10     The majority opinion in *Sony* described the development of the law

11  governing liability for copyright infringement by others as follows:

12      "The Copyright Act does not expressly render anyone liable for
        infringement committed by another.  In contrast, the Patent Act
13      expressly brands anyone who 'actively induces infringement of a
        patent' as an infringer, 35 U.S.C. § 271(b), and further imposes
14      liability on certain individuals labeled 'contributory' infringers, *id.,* §
        271(c).  The absence of such express language in the copyright statute
15      does not preclude the imposition of liability for copyright
        infringements on certain parties who have not themselves engaged in
16      the infringing activity.  For vicarious liability is imposed in virtually
        all areas of the law, and the concept of contributory infringement is
17      merely a species of the broader problem of identifying the
        circumstances in which it is just to hold one individual accountable
18      for the actions of another."

19  464 U.S. at 434-35 (footnote omitted).

20     In a footnote to this passage, the Court noted that the lines between the

21  different types of infringement are not clearly drawn.  *Id.* at 435 n.17 ("As the

22  District Court correctly observed, however, 'the lines between direct infringement,

23  contributory infringement, and vicarious liability are not clearly drawn. . . .' 480

24  F. Supp. 457-458.  The lack of clarity in this area may, in part, be attributable to

25  the fact that an infringer is not merely one who uses a work without authorization

26  by the copyright owner, but also one who authorizes the use of a copyrighted work

27  PLAINTIFF'S MEMORANDUM IN OPPOSITION

28  TO MOTION TO DISMISS – Page 9

1  without actual authority from the copyright owner.").

2      The *Sony* majority went on to describe the origins of the contributory

3  infringement doctrine in Justice Holmes' opinion in *Kalem Co. v. Harper*

4  *Brothers,* 222 U.S. 55 (1911), and to discuss contributory infringement under the

5  law governing patents.  464 U.S. at 435-42.  Based upon the evidence concerning

6  the intended use of the recording device and because the device  was "capable of

7  commercially significant noninfringing uses," the Court held that the manufacturer

8  could not be held liable for contributory copyright infringement stemming from

9  the use of the device by consumers to record the plaintiffs' copyrighted works.  *Id.*

10  at 442.

11      The U.S. Supreme Court provided further guidance with respect to the

12  circumstances under which a party may be held liable for the direct copyright

13  infringement of another in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,*

14  545 U.S. 913 (2005) ("*Grokster III")*.  *Grokster III* concerned claims of indirect

15  infringement by copyright owners against defendants which had distributed free

16  software that allowed users to share electronic files through peer-to-peer networks.

17  Relying upon the *Sony* decision, the district court granted summary judgment to

18  the defendants and the Ninth Circuit affirmed.  In a unanimous opinion, the Court

19  in *Grokster III* reversed, concluding that the Ninth Circuit had misapplied the

20  principles set forth in its *Sony* decision.  The Court stated as follows:

21      "One infringes contributorily by intentionally inducing or
    encouraging direct infringement, *see Gershwin Pub. Corp. v.*
22      *Columbia Artists Management, Inc.,* 443 F. 2d 1159, 1162 (CA2
    1971), and infringes vicariously by profiting from direct infringement
23      while declining to exercise a right to stop or limit it, *Shapiro,*
    *Bernstein & Co. v. H. L. Green Co.,* 316 F. 2d 304, 307 (CA2 1963).
24      Although '[t]he Copyright Act does not expressly render anyone
    liable for infringement committed by another,' *Sony Corp. v.*
25      *Universal City Studios,* 464 U. S., at 434, these doctrines of
    secondary liability emerged from common law principles and are well
26      established in the law, *id.,* at 486 (Blackmun, J., dissenting); *Kalem*

27  PLAINTIFF'S MEMORANDUM IN OPPOSITION

28  TO MOTION TO DISMISS – Page 10

*Co. v. Harper Brothers,* 222 U. S. 55, 62-63 (1911); *Gershwin Pub. Corp. v. Columbia Artists Management, supra,* at 1162; 3 M. Nimmer & D. Nimmer, Copyright § 12.04[A] (2005).

"Despite the currency of these principles of secondary liability, this Court has dealt with secondary copyright infringement in only one recent case, and because [plaintiff] has tailored its principal claim to our opinion there, a look at our earlier holding is in order. In *Sony Corp. v. Universal City Studios, supra,* this Court addressed a claim that secondary liability for infringement can arise from the very distribution of a commercial product. There, the product, novel at the time, was what we know today as the videocassette recorder or VCR. Copyright holders sued Sony as the manufacturer, claiming it was contributorily liable for infringement that occurred when VCR owners taped copyrighted programs because it supplied the means used to infringe, and it had constructive knowledge that infringement would occur. At the trial on the merits, the evidence showed that the principal use of the VCR was for ''time-shifting,'' or taping a program for later viewing at a more convenient time, which the Court found to be a fair, not an infringing, use. *Id.,* at 423-424. There was no evidence that Sony had expressed any object of bringing about taping in violation of copyright or had taken active steps to increase its profits from unlawful taping. *Id.,* at 438. Although Sony's advertisements urged consumers to buy the VCR to ''record favorite shows'' or ''build a library'' of recorded programs, *id.,* at 459 (Blackmun, J., dissenting), neither of these uses was necessarily infringing, *id.,* at 424, 454-455.

" On those facts, with no evidence of stated or indicated intent to promote infringing uses, the only conceivable basis for imposing liability was on a theory of contributory infringement arising from its sale of VCRs to consumers with knowledge that some would use them to infringe. *Id.,* at 439. But because the VCR was 'capable of commercially significant noninfringing uses,' we held the manufacturer could not be faulted solely on the basis of its distribution. *Id.,* at 442."

545 U.S. 931-32 (footnote omitted).

The Court reversed the grant of summary judgment to the defendants, explaining that the *Sony* rationale did not apply to shield the defendants from liability where "evidence of the distributor's words and deeds going beyond distribution as such shows a purpose to cause and profit from third-party acts of copyright infringement." *Id.* at 941.

In rejecting the broad reading of *Sony* relied upon by the defendants and

PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO MOTION TO DISMISS – Page 11

accepted by the Ninth Circuit, the Court noted that "nothing in *Sony* requires courts to ignore evidence of intent if there is such evidence, and the case was never meant to foreclose rules of fault-based liability derived from the common law."  545 U.S. at 934-35.[2]

The decisions in *Sony* and *Grokster III* demonstrate that Defendants' categorical approach to the issue of whether a party may be held liable for indirect copyright infringement is misplaced.  Rather than looking solely to what circumstances have resulted in findings of liability in prior cases, the court is to consider the facts at issue in a given controversy and to look at common law

---

[2]Defendants' discussion of *Sony* and *Grokster III* incorrectly assumes that these decisions establish the sole grounds upon which liability for indirect copyright infringement can be established.  ECF No. 76 at pp. 12-17.  In Plaintiff's view, this reading of these decisions is too simplistic and, indeed, is inconsistent with the Court's explanation of its *Sony* decision in *Grokster III*.  Indeed, Defendants' broad brush approach to *Grokster III* is akin to the broad reading of *Sony* that was specifically rejected by the unanimous *Grokster III* opinion.  Further, Defendants' analysis is flawed to the extent that it reads *Grokster III* to preclude liability for indirect infringement based upon "mere knowledge."  ECF No. 76 at p. 14.  Defendants ignore the fact that the Court's statement was made in the context of its discussion of when a product's distributor can be held liable based upon a theory of inducement of infringement.

PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO MOTION TO DISMISS – Page 12

principles to identify "the circumstances in which it is just to hold one individual accountable for the actions of another." *Sony,* 464 U.S. at 435.  Moreover, the Supreme Court has expressly indicated that additional fault-based doctrines may be developed by looking to common law principles. *Grokster III,* 545 U.S. at 934.

Despite Defendants' implication that if they are not the direct infringers then they are essentially innocent bystanders who bear no responsibility for the subject infringement, the fact is that Plaintiff has alleged that they played an instrumental role in said infringement.  The First Amended Complaint alleges that Defendants are liable either directly for unlawfully downloading *Elf-Man* and contributorily by participation in the exchanges that are consummated by way of BitTorrent downloading or, in the alternative, indirectly as a result of their having permitted other persons to access the Internet by way of their assigned IP address without adequate supervision and with apparent disregard of the property rights of others, including Plaintiff.[3]

───────────────

[3] Defendants' motion takes Plaintiff to task, claiming that it "has no clue and no basis to allege what any Defendant did or did not do, did or did not know, or did or did not intend with regard to any alleged BitTorrent infringement."  ECF No.76 at p. 10.  Plaintiff submits that its allegations regarding the use of Defendants' IP addresses for the subject downloading and Defendants' failure to secure or supervise their Internet access are more than sufficient to state claims for direct, contributory and indirect infringement.  The circumstances concerning how these Defendants' IP addresses came to be used for the infringement of Plaintiff's

PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO MOTION TO DISMISS – Page 13

The Copyright Act, read in conjunction with the above-referenced precedent, provides for the imposition of liability for copyright infringement by another in a variety of circumstances, including but by no means limited to the variants referenced in Defendants' motion.  Given Defendants' causal role in the unlawful downloading of Plaintiff's copyrighted work in violation of their agreements with their ISPs, liability for indirect infringement can be established based upon the contract law principle which allows claims to be asserted by intended third party beneficiaries of contracts.  *See* Restatement (Second) of Contracts, § 302(1).  A third party is an intended beneficiary of a contract "if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Id.* Moreover, in some circumstances such a right attaches without regard to the intention of the parties. *Id.* at Comment d ("In some cases an overriding policy, which may be embodied in a statute, requires recognition of such a right without

_____

copyright are proper subjects for discovery.  Indeed, Plaintiff anticipates seeking by way of discovery information concerning whether Defendants received notices from their ISPs concerning unlawful downloading, whether they allowed minor children to engage in such conduct, whether they failed to secure their access as required by their ISP agreements, and whether they used BitTorrent themselves to download Plaintiff's motion picture.  Plaintiff can hardly be expected to have procured such information at this stage of these proceedings.

PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO MOTION TO DISMISS – Page 14

1    regard to the intention of the parties.").[4]

2        Plaintiff alleges that each Defendant entered into a contract with his or her

3    Internet Service Provider, ECF No. 26 at p. 14, ¶ 109, and that a standard term in

4    such contracts is that the service may not be used for illegal activity, *id.* at ¶ 112.

5    As a copyright holder, Plaintiff is an intended beneficiary of the use limitations

6    imposed in these ISP agreements.  Indeed, its position is akin to the intended

7    beneficiary referenced in the following illustration from § 302 of the Restatement

8    (Second) of Contracts:

9        "A, the operator of a chicken processing and fertilizer plant, contracts
         with B, a municipality, to use B's sewage system.  With the purpose
10       of preventing harm to landowners downstream from its system, B
         obtains from A a promise to remove specified types of waste from its
11       deposits into the system.  C, a downstream landowner, is an intended
         beneficiary under Subsection(1)(b) [of § 302]."

12   Restatement (Second) of Contracts, illus. 10.

13       Like the municipality in this illustration, the Internet Service Providers by

14   contract impose restrictions on their subscribers, including Defendants, for the

15   protection of copyright holders, such as Plaintiff.  As such, Plaintiff should be

16   treated as an intended third party beneficiary of the agreements between

17   Defendants and their ISPs.

18       In the event that through discovery Plaintiff establishes that Defendants

19   failed to comply with these use limitations and thereby permitted the unlawful

20

21   _____

22   [4] When considering "general principles for interpreting contracts," the Ninth

23   Circuit has looked to the Restatement (Second) of Contracts's provisions

24

25   regarding intended third party beneficiaries.  *See, e.g., Klamath Water Users*

26   *Protective Ass'n v. Patterson,* 204 F.3d 1206, 1210-11 (9th Cir. 1999).

27   PLAINTIFF'S MEMORANDUM IN OPPOSITION
28   TO MOTION TO DISMISS – Page 15

downloading of *Elf-Man* by another, this Court can and should conclude that these failures constituted the indirect infringement of Plaintiff's copyright in violation of the Copyright Act.[5]

---

[5]Liability for indirect infringement could also be based upon negligence principles. Plaintiff recognizes that some districts have dismissed state law negligence claims in BitTorrent infringement actions on preemption grounds. *See, e.g., Liberty Media Holdings, LLC v. Tabora,* No. 12 CV 2234 (LAK) (S.D.N.Y. July 9, 2012) (attached hereto as Attachment 1). Plaintiff submits that the preemption analysis would not apply to its claims because rather than asserting a state law negligence claim, its claim for direct infringement is based upon the Copyright Act and that the law of negligence simply provides an analogy for the Court in defining the parameters of indirect infringement under the Act.

The elements of a cause of action for negligence are set out in § 281 of the Restatement (Second) of Torts as follows:

"The actor is liable for an invasion of an interest of another, if:

"(a)    the interest invaded is protected against unintentional invasion, and

"(b)    the conduct of the actor is negligent with respect to the other, or a class of persons within which he is included, and

PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO MOTION TO DISMISS – Page 16

Defendants claim at several points that Plaintiff has not alleged scienter in its claim for indirect infringement.  ECF No. 76 at pp. 11, 14.  This is incorrect. Plaintiff alleges the manner in which Defendants engaged in indirect infringement by "fail[ing] to secure, police and protect the use of their Internet service against illegal conduct, including the downloading and sharing of Plaintiff's  motion picture by others."  ECF No. 26 at p. 23, ¶ 170.  Plaintiff alleges further that "Defendants' conduct has been willful, intentional and in disregard of and indifferent to Plaintiff's rights." *Id.* at p. 24, ¶ 172.  To the extent that Defendants claim that Plaintiff is required to allege that they intentionally encouraged willful infringement, Plaintiff submits even if this is correct with respect to the two variants of indirect liability discussed by Defendants, i.e. contributory infringement and vicarious infringement, nothing in the Copyright Act nor in the decisional law requires that Plaintiff so allege when proceeding under its theory of liability for indirect infringement.  Indeed, it is Defendants' disregard of their

---

"(c)    the actor's conduct is a legal cause of the invasion; and

"(d)    the other has not so conducted himself as to disable himself
        from bringing an action for such invasion."

Plaintiff submits that its allegations that its copyright in *Elf-Man* has been

infringed upon coupled with the allegation that Defendants "failed to secure,

police and protect the sue of their Internet service against illegal conduct," ECF

No. 26 at p. 4, ¶¶ 22-23& p. 23 ¶ 170, either states a claim based upon this theory

of liability or can be amended to do so.

PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO MOTION TO DISMISS – Page 17

obligations to secure their access and not any intentional encouragement of infringement that is relevant to Plaintiff's claim.  Moreover, *Grokster III* makes explicit reference to "fault-based liability derived from the common law."  545 U.S. at 934-35, a term which encompasses both the knowing breach of a subscriber's contract with an Internet Service Provider and negligence in the operation and securing of one's Internet access.[6]

As the foregoing demonstrates, Plaintiff's theory of liability for indirect infringement does not fall squarely within any of the doctrines referenced in the existing decisional law.  Because, however, it is based upon U.S. Supreme Court precedent concerning liability for the infringing conduct of others under the Copyright Act and posits establishing liability for indirect infringement based upon common law fault-based principles, Defendant's motion to dismiss should be denied and Plaintiff's theory should be "explored and assayed in the light of actual facts rather than a pleader's suppositions."  *Electrical Const. & Maintenance Co., Inc. v. Maeda Pacific Corp.,* 764 F.2d 619, 623 (9th Cir. 1985) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure:  Civil Sec. 1357, at 601-603

---

[6]Defendant looks by analogy to the telephone context, likening the connection between a subscriber to an IP address to a telephone account holder.  ECF No. 76 at p. 3.  What Defendant ignores is that the telephone account holder in many circumstances will be held accountable for the use to which his or her telephone service is put.  For example, the account holder will be held accountable to pay for the use of the telephone line and cannot evade responsibility by simply asserting that someone else used it to make a costly overseas call.

PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO MOTION TO DISMISS – Page 18

(1969)).

D.    IF THE COURT OPTS TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT, DISMISSAL SHOULD BE WITHOUT
PREJUDICE AND PLAINTIFF SHOULD BE AFFORDED LEAVE
TO AMEND

Defendants argue that in the event that the Court grants their motion to dismiss that it should be with prejudice. ECF No. 76 at p. 18. Defendants' position is contrary to the governing law.

Defendants' motion is directed solely against Plaintiff's Third Claim for Relief. ECF No. 76 at p. 1 (claiming that Plaintiff's First and Second Claims for Relief "have no evidentiary basis" but that "this motion deals with the latter" – referring to Plaintiff's Third Claim for Relief). Even if the Court construes their motion to dismiss the First Amended Complaint in its entirety as one for dismissal of its Third Claim for Relief, Plaintiff's First and Second Claims for Relief would stand. Presumably Defendants do not seek dismissal based upon alleged shortcomings in Plaintiff's First and Second Claims for Relief because Rule 12(b)(6) motions against claims for direct and contributory infringement in the BitTorrent context have been largely unsuccessful on other districts. *See, e.g., Malibu Media, LLC v. Does 1-11,* 12-cv-3810 (ER), S.D.N.Y. July 16, 2013 (attached hereto as Attachment 2); *Malibu Media, LLC v. Pelizzo,* 12-22768-CIV-SEITZ/SIMONTON (S.D.Fla. Dec. 20, 2012) (attached hereto as Attachment 3).

Further, dismissal with prejudice of a complaint for failure to state a claim is only permissible when the complaint "could not be saved by any amendment." *Gompper v. VISX, Inc.,* 298 F.3d 893, 898 (9th Cir 2002); *Polich v. Burlington Northern, Inc.,* 942 F.2d 1467, 1472 (9th Cir.1991). *See also Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Assen,* 298 F.3d 768, 772 (9th Cir 2002) (noting that dismissal without leave to amend under F.R.Civ.P. 12(b)(6) is only proper if the

PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO MOTION TO DISMISS – Page 19

complaint could not be cured by amendment).  Indeed, dismissal without leave to amend "is proper only in extraordinary cases."  *Brown v. Bogan,* 320 F.3d 1023, 1028 (9th Cir 2003).

In the event that the Court concludes that the manner in which Plaintiff has stated its alternative claims is problematic, Plaintiff requests leave to amend its complaint to remedy any such concerns.

E.    DEFENDANT'S ALTERNATIVE MOTION FOR A MORE DEFINITE STATEMENT SHOULD BE DENIED

In the alternative, Defendants seeks an order pursuant to Fed. R. Civ. P. 12(e) directing Plaintiff to make its complaint more definite and certain.  ECF No. 76 at pp. 18-20.

Motions under Rule 12(e) are "proper only when the pleading to which it is addressed is so vague that it cannot be responded to . . . ."  *In re Hanford Nuclear Reservation Liti*gation, 780 F. Supp. 1551, 1583 (E.D. Wa. 1991) (quoting 5A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 1377 at 601 (1984)).   Such motions are disfavored and granting only sparingly. *Id.*

Defendants' motion fails to meet this standard.  Defendants provide a list of seven requested "clarifications."  The first three of these requests would in effect require Plaintiff to abandon its alternative pleading by making allegations that each Defendant engaged in direct infringement.  Plaintiff submits that its alternative pleading is specifically permitted by  Fed. Civ. P. 8(d)(2) and it should not be required to abandon this alternative approach at this preliminary stage of this litigation.  The remaining requests appear to concern variants of indirect infringement addressed in Defendants' motion but not alleged in Plaintiff's First Amended Complaint.  As such, they have no relevance to this

PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO MOTION TO DISMISS – Page 20

1    action and these requests should be denied.

2        The First Amended Complaint gives Defendants fair notice of Plaintiff's

3    claims and, therefore, their alternative motion should be denied.

4                              III.  CONCLUSION

5        For the reasons set forth herein, Plaintiff requests that Defendants' motions

6    should be denied.

7    DATED: November 22, 2013

                                    Respectfully submitted,

8
                                    The VanderMay Law Firm
9
                                     s/ Maureen C. VanderMay
10                                   Maureen C. VanderMay, WSBA No. 16742
                                    email: elfmanwa@vandermaylawfirm.com
11                                   The VanderMay Law Firm PC
                                    2021 S. Jones Blvd.
12                                   Las Vegas, Nevada 89146
                                    Of Attorneys for Plaintiff
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    PLAINTIFF'S MEMORANDUM IN OPPOSITION
28    TO MOTION TO DISMISS – Page 21